**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

|  |  |  |
|---|---|---|
| | ) | |
| **UNION OF CONCERNED SCIENTISTS** | ) | |
| **and ELIZABETH ANNE SHEPPARD,** | ) | **Civil Action No.** |
| | ) | **18-10129-FDS** |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ANDREW WHEELER, as Administrator** | ) | |
| **of the Environmental Protection Agency, and** | ) | |
| **UNITED STATES ENVIRONMENTAL** | ) | |
| **PROTECTION AGENCY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____)

**MEMORANDUM AND ORDER ON MOTION TO DISMISS**

**SAYLOR, J.**

This is an action arising out of a directive by the Environmental Protection Agency that

prohibits scientists in receipt of certain EPA grants from serving on the agency's federal advisory

committees. The complaint alleges that the directive was arbitrary and capricious in violation of

the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.

Defendants have moved to dismiss the complaint for lack of subject-matter jurisdiction

under Fed. R. Civ. P. 12(b)(1), on grounds of lack of standing, finality, ripeness, and

justiciability, and for failure to state a claim upon which relief can be granted under Fed. R. Civ.

P. 12(b)(6).

It is perhaps worth noting at the outset what this case does *not* involve. It is not about the

best way to develop and implement our national environmental policies, or who are the proper

people to assist in that process. And of course it is not about the wisdom or effectiveness of

those policies.  Rather, this case involves a fairly narrow set of issues:  in substance, whether a specific EPA conflict-of-interest directive violates federal law, and whether plaintiffs are the proper parties to assert such claims.  Based on established federal law, and for the reasons set forth below, the challenged directive is not subject to judicial reversal, and accordingly the complaint will be dismissed.

## I.     Background

Unless otherwise noted, the following facts are drawn from the complaint, documents referred to in the complaint, and accompanying exhibits.

### A.     Factual Background

The Environmental Protection Agency is the principal agency of the federal government tasked with protecting the environment.  (Compl. ¶ 19).  In furtherance of its mission, the EPA administers grants, some of which fund scientific research.  (*Id.* ¶¶ 34, 36).  Thousands of these grants are awarded to individuals or groups affiliated with public institutions of higher learning, private universities, and not-for-profit organizations.  (*Id.*).

To help guide its decision-making, the EPA receives counsel on scientific and policy matters from almost two dozen federal advisory committees ("FAC"), including the Science Advisory Board ("SAB"), the Board of Scientific Counselors ("BSC"), and the Clean Air Scientific Advisory Committee ("CASAC").  (*Id.* ¶¶ 3, 25-26).  FACs are typically composed of scientists and other experts affiliated with universities, not-for-profit research institutions, private industry, and local governments.  (*Id.* ¶¶ 5-6, 28).

EPA FAC members are appointed by the Administrator of the EPA.  (*Id.* ¶ 28).  They typically serve a term of a defined length, usually two or three years, but are eligible to be reappointed to a second term.  (*Id.*).  FAC participation offers scientists an opportunity to help shape public policy.  (*Id.* ¶ 32).  Some FAC members are also paid for their work.  (*Id.*).

Like other agency heads, the EPA Administrator has broad discretion over the appointment of FAC members.  By regulation, "[u]nless otherwise provided by statute, Presidential directive, or other establishment authority, advisory committee members serve at the pleasure of the appointing or inviting authority.  Membership terms are at the sole discretion of the appointing or inviting authority."  41 C.F.R. § 102-3.130(a).

Some constraints on FAC composition are imposed by statute.  For present purposes, the most significant limitations are imposed by the Federal Advisory Committee Act ("FACA"), which requires, among other things, that committee membership be "fairly balanced in terms of the points of view represented and the functions to be performed."  *See* 5 U.S.C. App. 2 § 5(b)(2).  FACA further requires committees to be free from "inappropriate[ ] influence[ ] by the appointing authority or by any special interest."  *See* 5 U.S.C. App. 2 § 5(b)(3).[1]

Because some FAC members are scientists associated with universities and not-for-profit research institutions, some FAC members are also recipients of EPA grants that have been awarded to their universities and institutions.  (Compl. ¶¶ 29, 31, 34).

The Union of Concerned Scientists ("UCS") is a not-for-profit organization with a self-described mission of conducting scientific analysis and research in the public interest and representing the interests of the scientific community.  (*Id.* ¶ 10).  Its "core mission" is to advance and support the interests of the scientific community in government.  (*Id.* ¶ 11).  It also seeks to advance the interests of its individual members and members of its Science Network, a membership organization of individuals within USC.  (*Id.* ¶ 12).  Many of those members either currently hold a grant from the EPA or serve on a FAC, or plan to apply for a grant or seek to

---

[1] Other statutes provide specific qualifications for committee membership.  For example, the CASAC must have "at least one member of the National Academy of Sciences, one physician, and one person representing State air pollution control agencies."  42 U.S.C. § 7409(d)(2)(A).

serve on a FAC in the future.  (*Id.*).

On October 31, 2017, then-EPA Administrator E. Scott Pruitt issued a directive titled "Strengthening and Improving Membership on EPA Federal Advisory Committees."  (*Id.* ¶¶ 3, 33; Ex. A).  The directive stated that "[i]n order to strengthen and improve the independence, diversity and breadth of participation on EPA federal advisory committees," the EPA "shall, consistent with applicable laws and regulations, apply . . . [four] principles and procedures when establishing the membership of such committees."  (Ex. A).  The first principle—and the only one at issue in this case—is entitled "Strengthen Member Independence."  (*Id.*).  It provides that FAC "[m]embers shall be independent from EPA, which shall include a requirement that no member of an EPA federal advisory committee be currently in receipt of EPA grants, either as principal investigator or co-investigator, or in a position that otherwise would reap substantial direct benefit from an EPA grant."  (*Id.*).[2]  The second, third, and fourth principles direct the agency to increase participation in FACs from state, tribal, and local government officials; increase membership from historically unrepresented or underrepresented states and region ("Enhance Geographic Diversity"); and regularly rotate membership ("Promote Fresh Perspectives").  (*Id.*).

Dr. Elizabeth Anne Sheppard is Professor and Assistant Chair of Environmental and Occupational Health Sciences and Professor of Biostatistics at the University of Washington.  (Compl. ¶ 15).  She is one of the seven members of CASAC.  (*Id.*).  She is currently serving a three-year term on CASAC and is eligible for reappointment to an additional term when her current term concludes.  (*Id.*).  Before the directive was issued, she simultaneously served on CASAC and was the recipient of a $3 million EPA grant.  (*Id.* ¶ 16).  As a result of the directive,

---

[2] The first principle further provides that it "shall not apply to state, tribal or local government agency recipients of EPA grants."  (Compl. Ex. A).

she was forced to give up her role as co-investigator on the grant and has not sought EPA grant

funding for any future research.  (*Id.* ¶¶ 16, 66-69).  The complaint alleges that if the directive

were rescinded, it is likely she would reassume her role as co-investigator, or otherwise seek

EPA grant funding, while continuing to serve on CASAC.  (*Id.* ¶¶ 17-18).  She wishes to be

considered for EPA research grant funding in the future *and* continue serving on CASAC.  (*Id.* ¶

18).  She is paid for her work on CASAC, and also views her participation as an important form

of public service.  (*Id.* ¶¶ 18, 32).

### B.       Procedural Background

Defendants have moved to dismiss the complaint for lack of subject-matter jurisdiction

under Fed. R. Civ. P. 12(b)(1), on grounds of lack of standing, finality, ripeness, and

justiciability, and for failure to state a claim upon which relief can be granted under Fed. R. Civ.

P. 12(b)(6).

## II.      Legal Standard

On a motion to dismiss for lack of subject matter jurisdiction made pursuant to Fed. R.

Civ. P. 12(b)(1), "'the party invoking the jurisdiction of a federal court carries the burden of

proving its existence."  *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (quoting *Taber*

*Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993)).  When ruling on a 12(b)(1)

motion the court "must credit the plaintiff's well-[pleaded] factual allegations and draw all

reasonable inferences in the plaintiff's favor."  *Merlonghi v. United States*, 620 F.3d 50, 54 (1st

Cir. 2010).

On a motion to dismiss for failure to state a claim made pursuant to Fed. R. Civ. P.

12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the

benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496

F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a

motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  In other words, the "[f]actual allegations must be enough to

raise a right to relief above the speculative level, . . . on the assumption that all the allegations in

the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).  "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the complaint fails to set forth "factual

allegations, either direct or inferential, respecting each material element necessary to sustain

recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir.

2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir.

2005)).

## III.   Analysis

Defendants contend that the complaint should be dismissed because (1) plaintiffs lack

standing; (2) plaintiffs are challenging a non-final agency action and are asserting claims that are

not ripe for review; and (3) plaintiffs are asserting claims that are nonjusticiable because they

challenge a matter committed to agency discretion by law without any meaningful standard of

review.

### A.   Standing

Standing is a threshold question in every case; "[i]f a party lacks standing to bring a

matter before the court, the court lacks jurisdiction to decide the merits of the underlying case."

*United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992).  To satisfy the case-or-

controversy requirement of Article III of the United States Constitution, plaintiffs bear the

burden of establishing that they (1) have suffered an "injury-in-fact" that is "concrete and

particularized" and "actual or imminent"; (2) that the injury is "'fairly traceable' to the actions of

the defendant"; and (3) that the injury will likely be redressed by a favorable decision. *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012).  Those elements must be proved "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

It is clear that Dr. Sheppard has standing to assert her claims.[3]  As a result of the directive, she was forced to give up her role as co-investigator on an $3 million EPA research grant in order to continue serving on CASAC, and has not sought EPA grant funding for any future research.  She has therefore suffered an injury in fact that is concrete and particularized, actual and imminent, and fairly traceable to the directive.  *See Natural Res. Def. Council, Inc. v. Wheeler*, 2019 WL 1299938, at *8 (S.D.N.Y. Mar. 21, 2019).  Furthermore, her injury is likely to be redressed by the declaratory relief plaintiffs seek:  if the directive were rescinded, she would likely reassume her role as co-investigator on the EPA grant that she gave up.  Because Dr. Sheppard has standing and because she seeks the same relief as UCS—to have the directive set aside—the court does not need to decide whether UCS has standing in its own right under associational or organizational standing theories, and can assume it does for purposes of this motion.  *See Tilley v. TJX Companies, Inc.*, 345 F.3d 34, 36-37 (1st Cir. 2003) (citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 264 & n.9 (1977)).  Accordingly, the complaint alleges sufficient facts to support plaintiffs' claim of standing to challenge the directive, and will not be dismissed on that basis.

**B.      Finality and Ripeness**

Defendants next contend that the directive is not a final agency action and that plaintiffs'

---

[3] Defendants apparently no longer contend otherwise.

claims are not ripe for review.

The starting point for analysis is the waiver of sovereign immunity in the APA. "Under settled principles of sovereign immunity, 'the United States, as sovereign, is immune from suit, save as it consents to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Dalm*, 494 U.S. 596, 608 (1990) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)) (internal quotation marks and alterations omitted); *see also* Charles A. Wright & Arthur R. Miller, 14 Fed. Prac. & Proc. § 3654 (4th ed.) ("[T]he absence of consent by the United States to suit has been treated by courts as a fundamental defect that deprives the district court of subject matter jurisdiction."). The EPA, an as an agency of the United States, is also entitled to sovereign immunity. *Sarit v. U.S. Drug Enforcement Admin.*, 987 F.2d 10, 16 (1st Cir. 1993). A plaintiff bears the "burden of proving [that] sovereign immunity has been waived." *Mahon v. United States*, 742 F.3d 11, 14 (1st Cir. 2014).

The APA provides an explicit waiver of sovereign immunity for individuals seeking equitable relief if they have suffered "a legal wrong because of agency action." 5 U.S.C. § 702; *see also Sarit*, 987 F.2d at 16 & n.5. In addition, judicial review is available where there is a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

### 1.      Finality

In order for an agency action to be considered "final" and therefore subject to review, it (1) must mark the consummation of the agency's decision making process—that is, it cannot be merely tentative or interlocutory, and (2) it must be an action by which rights or obligations have been determined, or from which legal consequences will flow. *Bennett*, 520 U.S. at 177-78.

Defendants contend that the directive is merely a general statement of policy—an explanation of the policies that will guide the agency in its exercise of discretion in appointing

8

committee members—rather than a final agency action subject to immediate judicial review. But

the directive uses mandatory language, such as the word "shall," and nothing in it indicates it is

tentative or interlocutory. It has already been applied to Dr. Sheppard, whose rights and

obligations were determined when she was forced to give up her role as co-investigator on an

EPA grant in order to continue serving on CASAC. The directive therefore constitutes a final

agency action subject to judicial review under 5 U.S.C. § 704.

### 2. Ripeness

The ripeness doctrine is intended to "prevent the adjudication of claims relating to

'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"

*Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (quoting *Thomas v. Union Carbide Agric.*

*Prods. Co.*, 473 U.S. 568, 580-81 (1985)). To be ripe, a complaint must "show that there is a

substantial controversy, between parties having adverse legal interests, of sufficient immediacy

and reality to warrant the issuance of the judicial relief sought." *Id.* (quotation marks and

citations omitted).

The ripeness analysis has two prongs: fitness and hardship. *See Texas v. United States*,

523 U.S. 296, 300-01 (1998). "The fitness prong 'has both jurisdictional and prudential

components.'" *Reddy*, 845 F.3d at 501 (quoting *Roman Catholic Bishop of Springfield v. City of*

*Springfield*, 724 F.3d 78, 89 (1st Cir. 2013)). "The jurisdictional component . . . concerns

'whether there is a sufficiently live case or controversy, at the time of the proceedings, to create

jurisdiction in the federal courts.'" *Id.* (quoting *Roman Catholic Bishop*, 724 F.3d at 89). "The

prudential component . . . concerns whether 'whether resolution of the dispute should be

postponed in the name of judicial restraint from unnecessary decision of constitutional issues.'"

*Id.* (quoting *Roman Catholic Bishop*, 724 F.3d at 89). By contrast, the hardship prong is wholly

prudential, and requires that a plaintiff show that he will "suffer [direct and immediate harm]

from withholding of a decision." *McInnis-Miesnor v. Maine Med. Ctr.*, 319 F.3d 63, 73 (1st Cir.

2003).  A strong showing on one prong may compensate for a weak showing on the other.  *Id.*

Here, largely for the same reasons that the directive constitutes final agency action, the

complaint has alleged sufficient facts to establish both the fitness and hardship prongs of

ripeness.  As to Dr. Sheppard's claim, the Court is not being "asked to resolve a hypothetical and

abstract dispute[, but] rather . . . a real and concrete one."  *See Labor Relations Div. of Constr.*

*Indus. of Mass., Inc. v. Healey*, 844 F.3d 318, 330 (1st Cir. 2016).  The directive has already

caused Dr. Sheppard to give up her EPA grant in order to continue serving on CASAC.  The

facts underlying her claim are sufficiently developed, and there is no prudential reason to

postpone resolution of the dispute.

Nor does the complaint suggest that plaintiffs' claims are based on "wholly contingent"

harms that will not necessarily come to pass.  *See Healey*, 844 F.3d at 330.  The complaint

alleges a concrete wrong that has already befallen Dr. Sheppard.  The plaintiffs' claims are

therefore ripe, and the complaint will not be dismissed on that basis.

## C.      Justiciability and Failure to State a Claim

Finally, defendants contend that plaintiffs' claims are nonjusticiable because they

concern a matter committed to agency discretion without any meaningful standard of review.

As noted, the APA provides for judicial review for persons who have suffered legal

wrongs because of final agency actions.  It further provides, however, that sovereign immunity is

not waived, and judicial review is unavailable, where "agency action is committed to agency

discretion by law."  *See* 5 U.S.C. §§ 701(a)(2), 702, 704.  The Supreme Court has held that

"subsection (a)(2) applies 'in those rare instances where statutes are drawn in such broad terms

that in a given case there is no law to apply.'"  *Webster v. Doe*, 486 U.S. 592, 599 (1988)

(quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971)).  "[E]ven

when Congress has not affirmatively precluded judicial oversight, 'review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Id.* at 599-600 (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)).  Subsection (a)(2) therefore "requires careful examination of the statute on which the claim of agency illegality is based," to see if there is a "basis on which a reviewing court could properly assess" the agency action. *Id.* at 600.

### 1.      Count 1:  Alleged Violation of the APA, 5 U.S.C. § 706(2)(A)

Count 1 alleges that the directive is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2)(A). Specifically, Count 1 alleges that the directive (1) is not an exercise of reasoned decision-making, because the agency did not consider reasonable alternatives or articulate a rational connection between the facts found and the choice made; (2) is a *sub silentio* departure from a previously established agency policy without adequate explanation; (3) conflicts with, and is unnecessary, in light of the conflict of interest statute, 18 U.S.C. § 208, and regulations promulgated by the Office of Government Ethics ("OGE"); and (4) amounts to a clear error in judgment.

Defendants contend that Count 1 is nonjusticiable because § 208 and OGE rules are not privately enforceable, are inapposite to the directive, and therefore provide no meaningful standard of review.  They further contend plaintiffs do not come within the zone of interests protected by the ethics laws.  Moreover, they contend, Count 1 fails to state a claim for a violation of those laws and rules.

Plaintiffs counter that the directive conflicts with federal ethics rules because it articulates a blanket ban on service on FACs by EPA grant recipients, whereas those rules require an individualized review to determine if there is actually an ethical concern.  They further contend

that plaintiffs are within the zone of interests of the relevant statutes because their interest in

protecting the ability of unbiased experts to advise the government is the same interest

safeguarded by the conflict-of-interest statute and the OGE regulations.

In *Physicians for Social Responsibility v. Wheeler*, 2019 WL 569448 (D.D.C. Feb. 12,

2019), Judge McFadden considered a similar challenge to the directive and granted the motion to

dismiss.  He held that while the plaintiffs had established standing, alleged claims ripe for

review, and alleged injuries within the zone of interests protected by the conflict-of-interest

statute and OGE regulations, the complaint was nonetheless nonjusticiable and failed to state a

claim.  *Id.* at \*4-7, 17.  In granting the motion to dismiss, he made the following specific

findings:

- "The Directive does not violate the conflict of interest statute or OGE regulations";

- "OGE's regulations preclude judicial review of [the plaintiffs' claim under OGE procedural requirements for supplemental ethics rules], and in any event, [the complaint fails] to state a claim for which relief may be granted";

- "Sections 5(b)(2) and 5(b)(3) of FACA provide no meaningful standard for review";

- "[The] claim that the Directive violates statutes establishing EPA advisory committees fails to state a claim upon which relief can be granted"; and

- "EPA has adequately explained its change in policy."

*Id.* at \*7, 10, 11, 14, 15.  The Court finds Judge McFadden's reasoning in *Physicians* persuasive,

and will follow the same course here.

Here, as in *Physicians*, the Court concludes that the claims asserted in Count 1 are

nonjusticiable, even assuming that plaintiffs are within the zone of interests protected by the

conflict-of-interest statute and OGE regulations.  Plaintiffs allege that the directive violates the

conflict-of-interest statute as well as a number of federal ethics rules, including 5 C.F.R. §

2635.402(b)(1)(ii), (b)(3).  Those OGE procedural regulations, however, preclude judicial

review.  As Judge McFadden observed:

> Courts . . . are precluded from reviewing alleged violations of these procedural
> requirements.  Under 5 C.F.R. § 2635.106(c), a "violation of this part . . . does not
> create any right or benefit, substantive or procedural, enforceable at law by any
> person against the United States, its agencies, its officers, or any other person."
> OGE adopted that language to "more closely reflect[] section 504 of Executive
> Order 12,674," which addresses "Judicial Review."  Section 504 provides that
> "[t]his order is intended only to improve the internal management of the executive
> branch and is not intended to create any right or benefit, substantive or
> procedural, enforceable at law by a party against the United States, its agencies,
> its officers, or any person."  The D.C. Circuit has interpreted nearly identical
> language in an executive order to preclude private enforcement through an APA
> action . . . .  The regulation [the plaintiffs] seek[] to enforce itself prohibits
> judicial review . . . .  [The plaintiffs] may not enforce rights under a regulation
> that explicitly precludes private enforcement through the backdoor of an APA
> claim.

*Id.* at *10 (citations omitted).

Even if judicial review had not been expressly precluded, the directive does not state a

claim for a violation of the conflict-of-interest statute and OGE regulations.  Those statutes and

regulations do not apply to the directive, and do not provide any meaningful standard of review.

As Judge McFadden observed:

> The statute and OGE regulations prohibit government *employees* from
> participating in certain activities.  The Directive, however, is a statement of EPA
> *policy*, explaining who EPA will consider for appointment to advisory
> committees.  That someone *may* serve on an advisory committee without
> incurring liability under the conflict of interest statute does not dictate that an
> agency *must* appoint him as a member.  While EPA clearly cannot appoint
> someone to an advisory committee that Section 208 prohibits, Section 208 does
> not require EPA to appoint anyone not otherwise excluded under the statute.  In
> other words, Section 208 and the OGE regulations function as a floor, not a
> ceiling, for acceptable government service . . . .  Neither the conflict of interest
> statute nor OGE regulations dictate who agency heads *must* appoint or retain
> under the broad discretion afforded by FACA.

*Id.* at *8, 10 (citations omitted).

The EPA has also provided an adequate explanation for the directive, to the extent that it

represents a departure from previously established agency policy.  Again, the Court is persuaded

by Judge McFadden's analysis:

> . . . EPA knew that the Directive represented a policy shift.  The Directive's title
> is "*Strengthening and Improving* Membership on EPA Federal Advisory
> Committees," and its goal was to "strengthen and improve the independence,
> diversity and breadth of participation on EPA federal advisory committees."
> Indeed, the accompanying memorandum explained that EPA sought to
> "strengthen[] the integrity, objectivity and reliability of EPA" advisory
> committees through the Directive.  The memorandum also gives plausible
> justifications for its policy:  "A vital part of ensuring integrity and confidence in
> EPA's [advisory committees] comes from guaranteeing that [committee]
> members remain independent of the Agency during their service," and "members
> in direct receipt of EPA grants while serving on an EPA [advisory committee] can
> create the appearance or reality of potential interference with their ability to
> independently and objectively serve as [committee] members." . . . EPA believes
> its new appointment policy is better, and EPA sufficiently gave its reason for
> adopting it.

*Id.* at *16-17 (citations omitted).

Nor does the directive amount to a clear error in judgment.  Again, in the words of Judge

McFadden:

> The Directive is a reasonable exercise of the Administrator's broad appointment
> discretion, and EPA's explanation that it sought to "ensur[e] integrity and
> confidence in [its] [advisory committees]," fits comfortably within the zone of
> reasonableness . . . . [The plaintiffs] have not plausibly alleged that the Directive
> is irrational, especially when the four interrelated parts are viewed holistically . . .
> . The memorandum attached to the Directive evidences that EPA considered
> factors relevant to crafting its appointment policy, *e.g.*, "all [advisory committees]
> must be 'fairly balanced in terms of the points of view represented and function to
> be performed by the committee," and "[t]he EPA Administrator should choose
> qualified candidates to serve on the EPA's" advisory committees.  Thus, the
> Administrator did not need to provide more explanation of EPA's change to its
> discretionary appoint[ment] policy.

*Id.* at *17 (citations omitted).

For all of those reasons, Count 1 is nonjusticiable and fails to state a claim upon which

relief can be granted, and accordingly will be dismissed.

### 2.   Count 2:  Alleged Violation of the APA, 5 U.S.C. § 706(2)(C)

Count 2 alleges that the directive exceeds the agency's statutory authority in violation of

the APA, 5 U.S.C. § 706(2)(C).  It specifically alleges that the directive is not consistent with

provisions of FACA, 5 U.S.C. App. 2 §§ 7(c), 8(a), that require agency heads to comply with the

directives of the Administrator of the General Services Administrations ("GSA").  Specifically,

plaintiffs contend, the directive is not consistent with the GSA directive for agency heads to

review FAC membership eligibility in conformance with applicable conflict-of-interest statutes,

regulations issued by the OGE (including any supplemental agency requirements), and other

federal ethics rules.  According to plaintiffs, the EPA directive is inconsistent with those rules

and requirements because it mandates that FAC membership eligibility be reviewed based on

conflicting criteria.  *See* 41 C.F.R. § 102-3.105(h).

The Court finds that Count 2, like Count 1, is nonjusticiable and fails to state a claim.  In

*Physicians*, Judge McFadden examined the relationship between the directive and 41 C.F.R. §

102-3.105(h), upon which Count 2 relies, and observed the following:

> [The plaintiffs] argue that the conflict of interest statute and OGE regulations
> constrain agency heads' appointment discretion.  Fair enough.  Agency heads'
> appointment discretion is not unbounded . . . . To be sure, because agencies must
> ensure that committee members are not conflicted, 41 C.F.R. § 102-3.105(h),
> agency heads may not craft appointment policies that disregard applicable ethics
> rules.  But the Directive does no such thing.  The Directive is "in addition to
> EPA's existing policies and legal requirements preventing conflicts of interest."
> And Section 208 and the OGE regulations do not dictate whom Administrators
> must, or even should, appoint to federal advisory committees . . . . [I]f an agency
> selects advisory committee members under a higher ethical standard than what the
> conflict of interest statute and OGE regulations require, that is entirely compliant
> with FACA's requirement that committee members not be conflicted.  So the
> conflict of interest statute and OGE regulations establish only a uniform ethical
> floor that agency heads may not dip below.  They do not, however, constrain an
> agency's ability to appoint and retain individuals under a higher ethical standard.

*Id.* at *9 (citations omitted).  This Court agrees.  The regulation, 41 C.F.R. § 102-3.105(h),

establishes an ethical floor, not a ceiling.  The directive is not inconsistent with that requirement,

and therefore does not exceed the agency's statutory authority.

Count 2 therefore fails for lack of justiciability and for failure to state a claim upon which relief can be granted, and will be dismissed accordingly.

### 3.      Count 3:  Alleged Violation of the APA, 5 U.S.C. § 706(2)(A), and FACA, 5 U.S.C. App. 2 § 5(b)(2), (c)

Count 3 alleges that the directive is an agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, all in violation of the APA, because it violates the FACA requirement that committee membership be "fairly balanced in terms of the points of view represented and the functions to be performed."  *See* 5 U.S.C. § 706(2)(A); 5 U.S.C. App. 2 § 5(b)(2), (c).[4]  Specifically, Count 3 alleges that the directive creates FACs that are not fairly balanced because it disproportionately excludes scientists with academic and non-for-profit institutions from service on FACs.

Defendants contend that Count 3 is nonjusticiable because section 5(b)(2) does not define "fairly balanced," nor does it specify how a "fairly balanced" membership on an advisory committee is to be achieved, and therefore does not provide a court with a meaningful standard to apply.

Plaintiffs counter that Count 3 is justiciable because FACA's requirement that committee membership be "fairly balanced" provides a meaningful standard against which to judge the legality of the directive.  (*See* Compl. ¶ 99, citing *Public Citizen v. National Advisory Comm. on Microbiological Criteria for Foods*, 886 F.2d 419, 422-23 (D.C. Cir. 1989) (Friedman, J., concurring); *id.* at 433-34 (Edwards, J., concurring in part and dissenting in part); *National Anti-Hunger Coalition v. Executive Committee of the President's Private Sector Survey on Cost*

---

[4] Counts 3 and 4 quote subsection (2)(A)—that is, 5 U.S.C. § 706(2)(A)—concerning arbitrary and capricious agency action, but provide a citation to subsection (2)(B) instead.  (Compl. ¶¶ 98, 106).  The Court assumes this is the result of a typographical error, and that the intended subsection is (2)(A) for both counts.

*Control*, 711 F.2d 1071, 1074 n.2 (D.C. Cir. 1983); *Colorado Environmental Coalition v.*

*Wenker*, 353 F.3d 1221, 1232-33 (10th Cir. 2004); *Cargill, Inc. v. United States*, 173 F.3d 323,

335, 338-39 (5th Cir. 1999); *Alabama-Tombigbee Rivers Coalition v. Department of Interior*, 26

F.3d 1103, 1106-07 (11th Cir. 1994)).  Specifically, they contend that "[t]he appropriate inquiry

in determining whether the Committee's membership satisfies the 'fairly balanced' standard in

section 5(b)(2) is whether the Committee's members 'represent a fair balance of viewpoints

given the functions to be performed.'" (*Id.*, quoting *Microbiological*, 886 F.2d at 423 (Friedman,

J., concurring)).

In *Physicians*, Judge McFadden concluded that section 5(b)(2) failed to provide a

meaningful standard of review.  He observed:

> Suppose that the Court could divine committee members' scientific and policy
> views and sought to balance membership between members who represent [the
> plaintiffs'] views with members who represent opposing views.  How would the
> Court determine whether the views of a particular committee member are close
> enough to those of [the plaintiffs'] to find them representative?  "Would the court
> rule, for instance, that when two parties agree on a certain percentage (what
> percentage?) of issues (which issues?) one may be deemed "representative" of the
> other?"

> And even if the Court could separate viewpoint and functional balance for
> scientific advisory panels, committees' functions, like the relevant viewpoints on
> issues they consider, are many . . . . Given these many functions, several skillsets
> and qualifications may be necessary . . . . Section 5(b)(2) provides no standard for
> determining whether a committee is fairly balanced functionally.

*Id.* at *13 (quoting *Microbiological*, 886 F.2d at 428 (Silberman, J., concurring)).

The Court agrees that there is no objective standard to apply to determine when a FAC's

membership has achieved a fair balance, and when it has not.  Because it fails to provide a

meaningful standard of judicial review, Count 3 will be dismissed as nonjusticiable.

### 4.    Count 4:  Alleged Violation of the APA, 5 U.S.C. § 706(2)(A), and FACA, 5 U.S.C. App. 2 § 5(b)(3), (c)

Count 4 alleges that the directive is an agency action that is arbitrary, capricious, an

17

abuse of discretion, or otherwise not in accordance with the law, all in violation of the APA, because it violates FACA's requirement that committees be free from "inappropriate[] influence[] by the appointing authority or by any special interest."  *See* 5 U.S.C. § 706(2)(A); 5 U.S.C. App. 2 § 5(b)(3), (c).  Specifically, Count 4 alleges that the directive creates FACs that are inappropriately influenced in two respects:  (1) by the appointing authority, the EPA Administrator, because the directive was established for an improper purpose and is arbitrary, capricious, and an abuse of discretion; and (2) by special interests, because FACs are now disproportionately composed of representatives of private industry and state and local governments.

Defendants contend that Count 4, like Count 3, is nonjusticiable because Congress similarly did not define "inappropriately influenced" or "special interest," nor did it specify any procedures to assure that FACs are free from "inappropriate influence" within the meaning of section 5(b)(3).  They contend that the reviewing court therefore has no meaningful standard by which to adjudicate claims that this requirement of FACA has been violated.

In *Physicians*, Judge McFadden observed:

> Of course, statutes direct the Administrator to make appointment decisions for advisory committees, *see, e.g.*, 42 U.S.C. § 7409(d)(2)(A), and he is likely to select candidates that reflect his policy preferences.  But that was true before the Directive.  At what point does his influence become inappropriate?

> And [the plaintiffs] have not articulated how the Directive would frustrate the agency's procedures for preventing "inappropriate influence."  Section 5(b)(3) "is directed to the establishment of *procedures* to prevent 'inappropriate' external influences on an already constituted advisory committee by . . . the appointing body."  Indeed, Judge Silberman expressed "doubt . . . that [Section 5(b)(3)] has any applicability to a committee's *membership*."  Section 5(b)(3) offers no suggestion of what those procedures must look like.  The Court declines to craft them from whole cloth with no guidance from the statute.

*Id.* at *14 (citations omitted) (quoting *Microbiological*, 886 F.2d at 430 (Silberman, J., concurring)).

The Court agrees.  Among other things, judicial review under section 5(b)(3) would require the Court to first identify whether something is a "special interest," then decide whether that special interest could "influence" a particular FAC, and, finally, determine whether that influence, if any, rises to the level of "inappropriate."  Again, without any objective standard, such a requirement would be impossible for the Court to administer or apply.  Section 5(b)(3) therefore also fails to provide a meaningful standard of judicial review, and Count 4 will be dismissed as nonjusticiable.

## IV.    Conclusion

For the foregoing reasons, defendants' motions to dismiss for lack of subject-matter jurisdiction and for failure to state a claim are GRANTED.

**So Ordered.**


/s/  F. Dennis Saylor
F. Dennis Saylor IV
Dated:  March 27, 2019                              United States District Judge